Bank of Pachuta et al. *v.* Vossburg Lumber & Novelty Company.

[74 South. 622, Division B.]

1. Banks and Banking. *Collections. Consignments of goods. Liability.*

Where a bank agreed to pay eighty per cent. of the invoice on consignments of lumber the invoices being assigned to it, and the

bank collected the proceeds of the resales of such lumber, by the consignee, in such case the bank was liable to the consignor for the amount collected on such sales, and could not apply such amounts to its own claims while acting as the agent of the consignor.

2. SAME.

In such case the cashier who acted for the bank and did not personally benefit by the transaction, except as a stockholder of the bank, was not liable.

APPEAL from the chancery court of Clarke county. HON. G. C. TANN, Chancellor.

Suit by the Vossburg Lumber & Novelty Company against the Bank of Pachuta and another. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Heidelberg & Heidelberg,* for appellant.

In *Hendrix* v. *Robinson and Stevens,* 56 Miss. 694, it is held that a promise to pay the debt of another creates no liability, if the primary debtor continues liable unless the assumption be in writing. In *Bloom* v. *McGrath and Compton,* 56 Miss. 249, it is held that a parol promise to answer for the debt, default or miscarriage of another, for which that other continues liable is within the statute of frauds.

Counsel for appellee seeks to have the judgment of the court below affirmed both on the ground of actual and constructive fraud and also on the ground of negligence. It is sufficient reply to these charges to say that they were repudiated by the chancellor.

It is further given as an evidence of fraud that in May, 1912, according to Graves or in the first part of the year of 1912, according to Burton and another stockholder of the company, and that, too, notwithstanding the fact these stockholders purchasing Graves' stock were willing to give par value for the stock. This is

given as evidence of fraud attempted to be perpetrated by defendants in a transaction that happened nearly a year afterwards.   Truly, the gentleman's zeal for his cause has gotten the better of his judgment.   The fact that the Carter Lumber Company went into bankruptcy is also assigned as a reason why a fraud was perpetrated on complainant.   Why this is evidence of fraud, on the part of appellants, is not given by counsel and it is hard to conjecture.

The alleged fact that the bank received the proceeds of every car of lumber shipped by the Carter Lumber Company from January 1, 1913, to the time of the bankruptcy of said company, is given as another evidence of fraud.   A sufficient reply to this is that the record shows the contrary to be true as the testimony of Burton clearly shows.   Even if shown to be true it would furnish no evidence of fraud.

It is further contended for by counsel for appellees that the defendants sustained towards complainants the relationship of agent or trustee, and that their interest was in conflict with their principal or *cestui que trust,* and that the bank was therefore bound to appropriate collections made by it for the benefit of complainants. Counsel quotes in support of this most extraordinary proposition 5 Cyc. 508, and Pomeroy's Equity Jurisprudence, section 958.   The law cited by counsel is good law but has no application to the case at bar, as the instances cited by Mr. Pomeroy illustrative of the rule clearly show.   According to the contention of counsel, an attorney at law, who is an agent, or banks that take claims for collection, are bound to appropriate all payments made by the debtor to the credit of the party taking the claim for collection and that, too, regardless of the direction of the man making the payment.   In other words, if the Vossburg Lumber and Novelty Company should place a claim in the hands of appellee for collection and on the next day the person owing the debt should come and offer to pay counsel a fee for services

rendered, he could not accept the money in payment of the fee, but would be compelled to apply it on the claim placed in his hands for collection, regardless, too, of the wishes or direction of the party making the payment. Surely counsel will not seriously insist that he would be under any such obligation.

*R. M. Bourdeaux,* for appellee.

This entire record, the pleadings, exhibits, the testimony, the situation of the parties, their relationship and all the facts and circumstances and all the inferences from all the facts and circumstances gives rise to to four separate and distinct grounds of liability as follows, to wit:

First: The express promise to pay eighty per cent of the amount of the invoices. Second: Actual fraud. Third: Constructive fraud. Fourth: Negligence.

(1) Graves' express promise to pay eighty per cent. Learned counsel for appellants, in a most elaborate and very able brief, devote most of their time and attention to the said first ground of liability, to wit: Graves' express promise to pay eighty per cent of the amount of these invoices of lumber shipped by the Vossburg Lumber & Novelty Company to the Carter Lumber Company and thereby seek to have this court reverse the finding of a chancellor on controverted facts.

We frankly confess, for the purpose of argument, that there is testimony in this record which if believed will sustain the theories of counsel for appellant with respect to the first ground of liability, but on the other hand there is ample evidence to support our theory on this ground and, unfortunately for the appellants, it seems that the chancellor believed our witnesses instead of theirs, and, in the last analysis, there is nothing presented to this court on this point but a conflict on the facts.

Counsel for appellants challenge us to show what profit it was to the Bank of Pachuta to agree to pay eighty per cent of the amount of these invoices and argue that inasmuch as there was no motive for their promise that there was no such promise. Our answer is that if the promise was in good faith made with the intention of being carried out that this record conclusively shows that the Bank of Pachuta would not only have gotten the benefit on their old account with the Carter Lumber Company of the twenty per cent but. would also have gotten the benefit of the enhanced value of the lumber by reason of the Carter Lumber Company dressing same and also their profit in same which would have amounted to a considerable sum, and further that they stood no chance to loose anything because they collected for every sale made by the Carter Lumber Company and would have been assured this twenty per cent and the enhanced value of the lumber to apply on the indebtedness of the Carter Lumber Company to the Bank of Pachuta. After a most elaborate discussion of fragmentary and isolated facts, which said fragmentary and isolated facts, are of course favorable to appellants, and which said facts have been repudiated by the chancellor, counsel for appellants finally impliedly admit that there are some facts upon which to base the chancellor's decision, but seek to raise without a plea, the statute of fraud on the ground that Graves' promise was a promise to answer for the debt of another and was not in writing and further that there was no delivery of the goods.

Our answer to this is that it is nowhere claimed that the Bank of Pachuta was to pay this eighty per cent if the Carter Lumber Company didn't. It was not a promise of guaranty or to in any wise answer for the debt of another. It was an original primary obligation on the part of the bank of Pachuta to pay at all hazards without any connection or relation to the obligation of anybody else.

In conclusion, with respect to the said first ground of liability, we repeat that it is a question involving only controverted facts, which question has been decided adversely to our friends on the other side, and we think that the decision of the chancellor is not only not manifestly wrong but on the entire record that it is manifestly right.

(2) Actual Fraud. (3) Constructive Fraud. In this connection, we beg to call the court's attention to Fifth Cyc. of Law, page 508, where it states the law as follows: "Where interests are conflicting. If the collecting agent has any business of his own conflicting with that of the principal it is the agent's duty to decline the trust, or, if undertaking it, to give the preference to the principal. To act otherwise is deemed a fraud."

Again we cite you to section 959 of the second edition of that monumental treatise on Equity by Mr. Pomeroy, which is as follows: "Principal and agent. Equity regards and treats this relation in the same general manner and with nearly the same strictness as that of trustee and beneficiary. The underlying thought is that an agent should not unite his personal and his representative characters in the same transaction and equity will not permit him to be exposed to the temptation or brought into a situation where his own personal interests conflict with the interests of his principal and with the duties which he owes to his principal."

We confidently submit that equity will not permit an agent to collect thousands of dollars for itself and not one penny for its principal and on this point we respectfully urge a careful analysis of all the exhibits to defendant's answer.

(4) Negligence. We come now to consider the fourth ground of liability which we submit is in itself conclusive of the case eliminating altogether from consideration the other three grounds of liability heretofore discussed, we confidently submit that this record shows

such negligence alone by the bank of Pachuta as to render it absolutely liable to the complainants in this case and that negligence consisted in this very simple fact: The Bank of Pachuta had the legal right to, had the opportunity to and yet failed to charge these invoices to the Carter Lumber Company. So far as we have been able to ascertain, the authorities are unanimous, with the possible exception of Louisiana, in holding that a bank has a right to apply deposits to the extinguishment of the depositor's indebtedness as it matures. 5 Cyc. 550; 3 American English Encyclopedia of Law, 835.

By virtue of the assignment of these invoices by the Vossburg Lumber & Novelty Company to the Bank of Pachuta the Bank of Pachuta was thereby made the legal owner of the said invices and was in fact the creditor of the Carter Lumber Company in the amounts thereof and had a right to apply the deposits of the Carter Lumber Company in the Bank of Pachuta to the payment of said invoices.

ETHRIDGE, J., delivered the opinion of the court.

The Vossburg Lumber & Novelty Company filed a suit against the Bank of Pachuta and H. B. Graves for one thousand one hundred dollars alleging that the lumber company was engaged in the sawmill business and shipping lumber to customers; that among the customers was the Carter Lumber Company of Meridian, Miss; and that about the 1st of January, 1913, becoming apprehensive of the financial standing of the Carter Lumber Company, it had decided not to ship to said Carter Lumber Company a car of lumber then loaded and billed to it, or other lumber, but that the Bank of Pachuta, with whom the Carter Lumber Company was doing its banking business, agreed to pay eighty per cent. of the invoice on such consignments, and that having made this arrangement with the Bank of Pachuta through H. B.

Graves, cashier of the bank, it continued to ship different consignments of lumber to the Carter Lumber Company, and that it assigned to the bank the invoices, and that the Carter Lumber Company had paid the twenty per cent. above the eighty per cent. for which the bank was liable. It is also alleged that the Carter Lumber Company had executed bills of sale to the Bank of Pachuta from time to time for practically all the lumber on the yard or in the possession of the Carter Lumber Company, and that the Carter Lumber Company in selling lumber sold through the Bank of Pachuta by making out its invoices and sending them to the bank, and the bank collecting the proceeds of such sales from the customers of the Carter Lumber Company and applied it to the indebtedness due by the Carter Lumber Company to the Bank of Pachuta, and that the bank, instead of applying any of the sums to the payment of the eighty per cent. for which the bank was liable to complainant, that it applied the entire proceeds of the sales of the Carter Lumber Company to its individual indebtedness; that in May, 1913, the Carter Lumber Company went into bankruptcy, with liabilities amounting to over forty thousand dollars, and with assets of four hundred or five hundred dollars, after the lumber claimed by the bank under its bills of sale aforesaid was deducted. After the Carter Lumber Company went into bankruptcy the trustee in bankruptcy, through his attorneys, notified purchasers from the Carter Lumber Company not to pay the Bank of Pachuta on invoices sold until the trustee could first make investigations. Thereupon the Bank of Pachuta paid five thousand dollars to the trustee in bankruptcy of the Carter Lumber Company in settlement of its affairs, without being sued therefor.

It was the theory of the bank that it was the mere agent of the Vossburg Lumber & Novelty Company in forwarding the invoices and making collections for the eighty per cent., and that the eighty per cent. payment

was placed to the credit of the Vossburg Lumber & Novelty Company as mere advances for which that company was indebted to the bank, and it claimed that the Vossburg Lumber & Novelty Company had overdrawn the funds in the bank to their credit, and was indebted to the bank in the sum of five hundred and thirty-two dollars. The chancellor found in favor of the complainants, but deducted the amount the bank claimed against the complainants from the original demand, and gave judgment for the balance against both the bank and H. B. Graves. There was evidence showing the bank, through its cashier, knew the condition of the Carter Lumber Company, and that H. B. Graves had formerly been a stockholder in the Carter Lumber Company, and had aided the Carter Lumber Company, through the bank, after selling his stock in the company. The evidence showed that the bank of Pachuta collected for practically all of the sales made by the Carter Lumber Company, and applied the funds so derived to the reduction of its claims against the Carter Lumber Company, and by this means largely reduced the debt the Carter Lumber Company owed it. The chancellor evidently adopted the theory of the complainant on the evidence, and as to the Bank of Pachuta we are of the opinion that the evidence warrants the judgment, and that it would be contrary to equity to permit the bank to act as agent for the complainant, and by its dealing apply the proceeds of the property sold to the Carter Lumber Company to its individual debt, without paying the purchase price to the complainant, and the case is affirmed as to the bank.

We think, however, the evidence does not warrant a judgment against Graves because throughout the transaction he seems to have been acting for the bank and not to have been personally the beneficiary of the transaction, except as a stockholder of the bank.

Judgment will be entered here in favor of Graves, and the costs incurred on appeal, divided equally between the appellant and the appellee.

*Affirmed.*